## HICKMAN v. THE STATE.

1. The evidence examined, and held not to warrant an instruction on the subject of voluntary manslaughter.
2. The criticisms upon the charge are without merit; and the verdict is supported by the evidence.

NOVEMBER 11, 1914.

Indictment for murder. Before Judge Hill. Fulton superior court. June 27, 1914.

Burett Hickman was convicted of the murder of H. G. Bennett, and sentenced to be hung. The court refused him a new trial, and he brings error. From the testimony submitted on behalf of the State it appears that Bennett was a night-watchman or guard in the freight-yards of the Seaboard Air-Line Railway in the city of Atlanta. About nine o'clock at night two employees of the railway were attracted by the discharge of several pistol-shots near a freight-car. They immediately ran to the scene and discovered Bennett wounded and lying upon the ground. He was carried by them to a hospital, where he died a few hours afterwards. In a dying declaration made shortly before his death he said that he discovered some one in a box-car loaded with merchandise. He noticed that the door of the car was open, went to the door and flashed his light, and observed the defendant, who immediately drew a pistol. Bennett asked the defendant not to shoot, and about that time the defendant shot him three or four times. He returned the fire, and thought he shot the defendant twice. He further said that he went to the car to arrest the defendant, who shot him to avoid arrest. Shortly after the shooting the defendant went to a near-by house, and asked the occupant to send for his father, stating that he was wounded, and, upon being asked how he sustained his wounds, said that he was going through the Seaboard yards, and a detective told him to hold up, and he would not hold up, and the detective shot him. The next morning the defendant was taken to a hospital. Two officers called at the hospital, and he told them that his name was Will Thomas, that his father was dead, and that "two fellows held him up about the Tech School, and had shot him and robbed him." It was shown that the seal of the car had been broken, and that it was loaded with merchandise, including several boxes of shoes. Three of these boxes had been broken open and a pair of shoes taken from each, but not carried from the car.

The defendant introduced no evidence. In his statement he said that he and Bennett were down in the railroad yard, when they saw a light in a box-car; and Bennett said, "Stoop down; I see a light; go over yonder and tell Mr. O'Neal to come here." The defendant declined, saying, "No, I aint going; he will arrest me," to which Bennett replied, "No, tell him to come here." The defendant said, "No, I better not go over there." Then Bennett said, "Go there and shut the car-door; we will shut the car-door." Bennett and defendant started to the car, and when they approached near to it a man jumped out, and Bennett said, "Don't run; I will shoot you." Whereupon this unknown person shot the defendant and the decedent.

The officers who testified as to their conversation with the defendant at the hospital were introduced after the defendant had made his statement; and in reply to their testimony he was permitted to make an additional statement, in which he said that the officers on that occasion asked him what his name was, and he told them what it was, and they then said "Burett, what are you doing here shot?" To which he replied, "I got shot out yonder at the Seaboard shop last night."

*D. K. Johnston,* for plaintiff in error.

*Warren Grice, attorney-general, Hugh M. Dorsey, solicitor-general,* and *E. A. Stephens,* contra.

EVANS, P. J. (After stating the foregoing facts.) 1. The court instructed the jury: "If you believe that the officer made no attempt whatever to arrest him, made no call upon him to surrender, or not to shoot him, but deliberately, without notifying him of the fact that he had been detected and discovered, without attempting to arrest him, attempted to shoot him, and shot before this defendant shot at all, then, in that event, the defendant would not have been guilty of murder, but he might have been guilty of voluntary manslaughter if he shot under those circumstances." This charge is criticised on the ground that, under the facts hypothesised by the court, the defendant would have been guilty of voluntary manslaughter, and that the court should have so instructed the jury. In another ground it is also contended that the court erred in omitting to instruct the jury on the subject of voluntary manslaughter. The decedent was referred to in the testimony as being an officer of the railroad company, but from the context it is clear that he was

not an officer authorized by law to make arrests. He was a watch-
man for the railroad company, employed to protect its railroad
yards. Nevertheless, under the circumstances of this case, he was
authorized to arrest the defendant in the act of breaking open a
freight-car with intent to steal. This crime is a felony (Penal Code
(1910), § 181), and the statute authorizes a private person with-
out warrant to arrest for an offense committed in his presence
(Penal Code (1910), § 921). It is argued by counsel for the
plaintiff in error that there is evidence authorizing a deduction that
the decedent suddenly rushed upon the defendant, in an attempt to
encompass his arrest, without giving the defendant any notice or
warning of such purpose; and that the killing of the decedent under
these circumstances was voluntary manslaughter. The testimony
relied upon to support this argument is the statement in the dying
declaration of the decedent that he went to the car for the purpose
of making an arrest, and the testimony of one of the State's wit-
nesses that the first two shots which were fired were from the out-
side of the car. The deduction sought to be drawn is that as the
defendant was inside the car, the decedent, who was on the out-
side, fired the first shot in an attempt to make an arrest. The re-
ply to this argument is that the facts of the case do not authorize
the conclusion sought to be drawn. It was testified that the de-
fendant told the witness that he knew the purpose of the decedent
in going to the car which had been burglarized was to arrest the
thief. In his statement made at the trial the defendant admitted
that he knew the decedent was a watchman in the railroad-yard,
and that the watchman's purpose in going to the car where he was
mortally wounded was to arrest the person in the car. It is true
he denied that he was that person, but he admitted he knew that
the watchman approached the car for the purpose of arresting the
man in the car. There is no contradiction of the testimony, or of
the defendant's statement on the trial, that the defendant knew
that the purpose of the decedent in going to the car which had been
broken into was to arrest the felon therein. The dying declaration
of the watchman is that he warned the defendant not to shoot him,
and that the defendant shot him from the car. The identity of the
defendant as the slayer was established both circumstantially and
by the dying declaration of the decedent. The court might have well
omitted the excerpt from the charge to which exception is made,

as the evidence was insufficient to afford a basis for a charge on voluntary manslaughter.

2. There is no merit in the other exceptions to the charge. The verdict is supported by the evidence, and no reason appears for the grant of a new trial.

*Judgment affirmed. All the Justices concur.*